## Zimmerman, Appellant, *v.* Adams Express Company.

*Negligence—Principal and agent—Express companies—Special officers—Killing of person committing felony.*

In an action against an express company to recover damages for the death of the plaintiff's husband who was shot and killed by a special officer in the service of the company, the court committed no error in entering a nonsuit where from plaintiff's evidence it appeared that the deceased, a yard brakeman in a yard of a railroad company, was detected stealing goods from one of the cars of the defendant company standing in the yard of the railroad company, that he was arrested, escaped and was fleeing from the special officer at the time when the special officer shot and killed him, and that the officer who did the shooting did not point the revolver nor fire at the deceased, and did not intend to shoot him.

Argued Jan. 21, 1913. Appeal, No. 358, Jan. T., 1912, by plaintiff, from judgment of C. P. No. 1, Philadelphia County, Jan. T., 1909, No. 671, granting nonsuit in case of Alice M. Zimmerman v. Adams Express Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before KINSEY, J.

The opinion of the Supreme Court states the facts.

The court entered a nonsuit which it subsequently refused to take off.

*Error assigned* was in refusing to take off nonsuit.

*Victor Frey,* with him *Augustus T. Ashton* and *Robert*

*J. Earley,* for appellant.—The shooting was within the scope or the duty of the defendant's officer: Higbee v. Penna. R. R. Co., 209 Pa. 452; Deck v. B. & O. R. R. Co., 100 Md. 168; Sharp v. Erie R. R. Co., 184 N. Y. 100.

Whether the shooting was negligently or intentionally done and whether it was necessary were questions which ought to have been submitted to the jury: State v. Roane, 2 Devereux (N. C.) 58; Com. v. Long, 17 Pa. Superior Ct. 641; Com. v. Shortall, 206 Pa. 165; Conraddy v. People, 5 Park Cr. (N. Y.) 234; Southern Ry. v. James, 118 Ga. 340.

*John Lewis Evans,* with him *Thomas DeWitt Cuyler,* for appellee.—It is a well recognized principle that an officer may kill to prevent the escape of a felon: Com. v. Long, 17 Pa. Superior Ct. 641.

Even assuming that McCaughey should not have shot at Zimmerman, the evidence shows that he acted with proper caution and without negligence and Zimmerman's death is attributable solely to an accident.

Opinion by Mr. Justice Mestrezat, April 21, 1913:

This is an action to recover damages for the death of the plaintiff's husband who was shot and killed by an officer in the service of the defendant company. At the conclusion of the plaintiff's testimony, the court below granted a compulsory nonsuit which it subsequently refused to take off. The plaintiff has taken this appeal.

It appears from the evidence that Frederick Zimmerman, the deceased, had been employed as a brakeman by the Pennsylvania Railroad Company in its Philadelphia division for about twelve years prior to his death. During the last eight months of his life he was engaged as a yard brakeman in the yard between West Philadelphia and Broad Street station. On the morning of May 14, 1909, he was shot and killed in the yard at Broad Street station by one Thomas McCaughey who was a special officer of the defendant, the Adams Express Com-

pany. He left to survive him a widow who brings this action for herself and two minor children.

The statement avers that while Zimmerman was lawfully engaged in and about the duties of his employment as a brakeman at the Broad Street station he was negligently and without reasonable cause or necessity shot by one of the servants or employees of the defendant company who was engaged in acting as a watchman over certain of the cars and goods which were then being used by the company and standing upon the premises of the Pennsylvania Railroad Company, the employer of the decedent. Thomas McCaughey, who did the shooting, was called by the plaintiff and was the only witness who testified as to what occurred on the occasion. From his testimony it appears that he saw Zimmerman enter an express car in the station on May 6th and May 12th, 1909, and on the latter date open a box in the car. Zimmerman again entered the car on the 13th. After each visit to the car by Zimmerman, McCaughey reported it to his superior officer. On the morning of the shooting, May 14th, he and another officer were on guard and concealed in an express car standing on a track in Broad Street station, and between 4.30 and 4.45 o'clock Zimmerman again came into the car and was recognized by McCaughey as the man who had entered it on the previous occasions. Zimmerman broke open a crate and left the car. He soon returned, opened the side door, threw in a bucket and climbed in himself. He began to take eggs from the broken crate and put them into the bucket. McCaughey went toward him, holding a revolver in his right hand, and said: "You are under arrest." Zimmerman knocked McCaughey against the side of the car, then jumped from the car and started to run. The officer told him to halt, followed him and fired a shot in the air. Zimmerman continued to run and the officer again called to him two or three times to halt, and fired the second shot, down alongside of the car to the right. The two men were running in a space between two trains

which was not more than two and one-half or three feet wide. The officer was about a car length or perhaps not more than twenty or twenty-five feet behind Zimmerman when the second shot was fired. Zimmerman fell and when the officer came up with him he discovered that the bullet had struck him and he was dead. The officer testified that he pointed his revolver under the body of the car and shot down towards the tracks, that he did not aim at Zimmerman, and that the bullet could not have hit him if it had not ricocheted off something. The bottom of the car under which he fired was about the height of the hip or a little higher.

The coroner's physician testified at the trial that the bullet struck Zimmerman in the back at about the ninth rib, passed forward, slightly upward and toward the left, cutting the heart and lungs, and lodging under the skin by the fifth rib. The path of the bullet was apparently nearly straight.

The learned judge granted a nonsuit because, as stated by him, the deceased was detected in the commission of a felony, was arrested, escaped and was fleeing from the officer at the time he was shot, and further because the testimony of the plaintiff shows that the officer making the arrest did not point the revolver or fire at the deceased and did not intend to shoot him. The error assigned is the refusal of the court to take off the nonsuit.

We are at a loss to see how there can be a recovery in this case. The only witness who testified as to what occurred at the time of the shooting was McCaughey, the officer. He was called by the plaintiff and she is bound by what he says. We have given above substantially his testimony. From that it appears that the officer was fully justified in making the arrest and in attempting to recapture Zimmerman while he was fleeing. The arrest was made while the deceased was in the act of committing a felony and it was not only his duty but the officer was fully justified in recapturing

the escaped felon by any force or violence necessary to accomplish the purpose. But the officer testified that he did not attempt to shoot Zimmerman and did not shoot at him. He says: "Q. Was it (revolver) pointed at Zimmerman? A. No, sir......Q. Could the bullet have hit Zimmerman if it had not ricocheted off of something? A. No, sir. Q. Did you try to hit Zimmerman when you fired the second shot? A. No, sir; I did not. Q. After the second shot, when you ran up to where he was lying, did you think you had shot him? A. No, sir; I did not. I grappled with him." The railroad tracks on which the cars were standing at the place of the occurrence, extend east and west. Zimmerman jumped through the door on the north side of the car and fled between the train on that track and the one next above it. At the time of the shooting the two men were from twenty-five to thirty feet or possibly sixty feet apart. Zimmerman was fleeing into Broad Street station between two lines of cars about three feet apart. It is true that the bullet from the revolver in the officer's hand struck and killed Zimmerman. With that admission, however, must be considered the undisputed testimony of the plaintiff's own witness, and the uncontroverted fact testified to by the coroner's physician, called by the plaintiff, that the bullet entered the body in the back about the ninth rib, passed forward, slightly upward and toward the left, and lodged under the skin by the fifth rib. He further testifies that the bullet went up probably an inch and a half or two inches. It took a straight path through the body. This does not contradict the testimony of the officer that he did not shoot at Zimmerman; on the contrary, it corroborates his testimony. If he had fired directly at Zimmerman the ball could not have taken the course through the body that it did take. It could not have taken either an upward course or gone to the left after it had entered the body. There is no evidence in the case that would warrant the conclusion that the ball was deflected from its course after

it had entered the body. The coroner's physician testifies that so far as can be determined there was no serious deflection, and that the ball passed through the body in very nearly a straight course.

With this evidence before the jury it was not required to determine whether it was necessary for the officer to shoot Zimmerman to effect his arrest or prevent his escape, as contended by appellant. As above observed, the only testimony in the case bearing upon the point is that of the officer and he was called by the plaintiff. If his story is believed, and it is accredited by the plaintiff by the fact of her calling him and is not discredited by any testimony in the case, the officer neither shot at Zimmerman nor intended to shoot him. That is not an open question and must be conceded as a fact in the case. The officer testifies that it was not necessary to shoot Zimmerman, and for that reason he did not make the attempt. On the testimony submitted by the plaintiff, therefore, the unfortunate death of Zimmerman cannot be traced to the negligent act of the officer, but was an accident for which neither the officer nor the defendant company is liable.

The judgment is affirmed.